UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 12-24017-CIV-MORENO

LE TRAN,

    Plaintiff,

vs.

CELEBRITY CRUISES, INC. and STEINER
TRANSOCEAN LIMITED,

    Defendants.
_____/

## ORDER GRANTING MOTIONS TO DISMISS

THIS CAUSE came before the Court upon Defendant Steiner Transocean Limited's Motion to Dismiss Count VI (Unseaworthiness) for Failure to State a Cause of Action **(D.E. No. 14)**, filed on **December 18, 2012**, as well as upon Defendant Celebrity Cruises, Inc.'s Motion to Dismiss Counts I, III, VII & IX of Plaintiff's Complaint **(D.E. No. 15)**, filed on **December 18, 2012**. Plaintiff Le Tran filed this suit against Defendants Steiner Transocean Limited and Celebrity Cruises, Inc. for an illness she contracted while working aboard the cruise vessel M/S Celebrity Summit. Defendants in turn filed individual motions to dismiss certain portions of Tran's complaint. Steiner in particular contends that it cannot be liable for unseaworthiness as alleged in Count VI, while Celebrity Cruises challenges the sufficiency of the complaint's allegations regarding Tran's employment status in Counts I, III, VII, and IX. Since Steiner was neither the owner of the Celebrity Summit nor a demise charterer, the Court grants Steiner's motion to dismiss Count VI. In addition, because Tran has failed to offer sufficient factual allegations in support of her claim that Celebrity Cruises was her employer, the Court dismisses Counts I, III, VII, and IX without prejudice and with leave to refile.

## I. FACTUAL BACKGROUND

Plaintiff Tran worked aboard the vessel M/S Celebrity Summit as an employee of Defendant Steiner. In particular, Tran worked in a section of the ship containing a spa center operated by Steiner. The Celebrity Summit itself was "owned, managed, operated and/or controlled" by Defendant Celebrity Cruises. Pl.'s Compl. ¶ 41. Tran additionally alleges that Celebrity Cruises was potentially her employer under the "borrowed servant doctrine." Specifically, she states that "[l]ong-standing maritime jurisprudence allows a Plaintiff-seafarer to sue multiple Defendants as 'alleged potential Jones Act employers'" and that "the identity of the Jones Act employer is a question of fact for the jury." *Id.* ¶¶ 11, 23.

On December 17, 2009, Tran contracted scabies and suffered symptoms of appendicitis while aboard the Celebrity Summit. She alleges that her illness stemmed from an unreasonably unsafe working environment and that Defendants failed to identify and adequately treat her ailments. She subsequently filed suit against Defendants alleging four counts of negligence under the Jones Act, two counts of unseaworthiness, two counts of failure to provide maintenance and cure, and two counts of failure to treat.

Defendants have each filed a motion to dismiss certain portions of Tran's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, Steiner seeks dismissal of Count VI's allegations of unseaworthiness. It contends that it cannot be held liable for unseaworthiness as it was neither the owner of the Celebrity Summit nor a demise charterer of the vessel. Celebrity Cruises in turn moves for the dismissal of the Jones Act negligence allegations in Counts I and III as well as the claims for failure to provide maintenance and cure and failure to treat in Counts VII and IX, respectively. Since these counts are premised upon the

cruise line's alleged employment of Tran, Celebrity Cruises challenges the sufficiency of the complaint's allegations that it was Tran's employer under the borrowed servant doctrine.

## II. LEGAL STANDARD

Under Rule 8, a plaintiff must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When ruling on a motion to dismiss under Rule 12(b)(6), a court must view the complaint in the light most favorable to the plaintiff and assume the veracity of well-pleaded factual allegations. *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). However, this tenet does not apply to legal conclusions, and such conclusions "must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Though a proper complaint "does not need detailed factual allegations," it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). At a minimum, a plaintiff must present "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In other words, the complaint must contain "enough fact to raise a reasonable expectation that discovery will reveal evidence" of the required element. *Twombly*, 550 U.S. at 556. "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes*,

416 U.S. 232, 236 (1974)).

### III. DISCUSSION

*A. Steiner's Motion to Dismiss*

In Count VI of her complaint, Tran states that Steiner was a "demise charterer with operational control over the section of the ship where [she] was injured" and thus "had the absolute nondelegable duty to provide [her] with a seaworthy vessel." Pl.'s Compl. ¶¶ 49–50. As a result, Tran claims that Steiner "can . . . be found liable for the unseaworthy condition of the ship if there is evidence that [it was a] demise charterer[]." *Id.* ¶ 50. Steiner now contends in its motion to dismiss that, even assuming it had operational control over a section of the ship, such limited control does not constitute a demise charter permitting liability for unseaworthiness.

"Under the general maritime law, a vessel and its owner may be liable 'for injuries received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship.'" *Wai v. Rainbow Holdings*, 350 F. Supp. 2d 1019, 1028 (S.D. Fla. 2004) (quoting *The Osceola*, 189 U.S. 158, 175 (1903)). This standard is one of reasonable fitness, not perfection. *Id.* It does not call for "a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but [rather] a vessel reasonably suitable for her intended service." *Id.* (quoting *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960)).

"Under settled principles of admiralty law, liability for unseaworthiness . . . turns upon who possessed control of the ship such that it could best be charged as the owner at the time the accident occurred." *Id.* (quoting *Rodriguez v. McAllister Bros., Inc.*, 736 F.2d 813, 815 (1st Cir. 1984)). Consequently, "[d]amages for unseaworthiness of a vessel are 'traditionally only

available against the shipowner and the vessel.'" *Id.* (quoting *Stokes v. B.T. Oilfield Servs., Inc.*, 617 F.2d 1205, 1207 (5th Cir. 1980)). Nevertheless, there is an exception to this traditional rule of liability:

> A bareboat or demise charter . . . whereby the charterer assumes full possession and control of the vessel, constitutes the only form of charter that purports to invest temporary powers of ownership in the charterer and, therefore, constitutes the only conceivable basis on which the vessel owner could seek to escape liability for the unseaworthiness of his vessel.

*Id.* at 1028–29 (quoting *Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 181–82 (5th Cir. Unit A Sept. 1981)). Thus "for many, if not most, purposes the bareboat charterer is to be treated as the owner" and "[b]arring explicit statutory exemption, the bareboat charterer is personally liable for the unseaworthiness of a chartered vessel." *Id.* at 1029 (quoting *Reed v. The Yaka*, 373 U.S. 410, 412–13 (1963)).

Such a charter requires a "complete transfer of possession, command, and navigation of the vessel from the owner to the charterer." *Morris v. Paradise of Port Richey, Inc.*, No. 8:07-CV-845-T-27TBM, 2009 U.S. Dist. LEXIS 2392, at *10 (M.D. Fla. Jan. 14, 2009) (quoting *Agrico Chem. Co. v. M/V Ben W. Martin*, 664 F.2d 85, 91 (5th Cir. Dec. 1981)). A demise is therefore "tantamont [sic] to, though just short of, an outright transfer of ownership." *Id.* (quoting *Agrico Chem. Co.*, 664 F.2d at 91). "Anything short of a relinquishment of total control is considered a voyage or a time charter or no charter at all." *Gatewood v. Atl. Sounding Co.*, No. 3:06-cv-41-J-32HTS, 2007 U.S. Dist. LEXIS 37484, at *19 (M.D. Fla. May 23, 2007). Accordingly, "[c]ourts are reluctant to find a demise when the dealings between the parties are consistent with any lesser relationship." *Lovette v. Happy Hooker II*, No. 2:04-cv-522-FtM-29SPC, 2006 U.S. Dist. LEXIS 1451, at *9 (M.D. Fla. Jan. 11, 2006).

In this case, Steiner maintains that Tran has failed to offer allegations under which it could be held liable for unseaworthiness. From the outset, Steiner notes that Tran does not assert at any point that it had full possession and control over the entire vessel. Rather, she concedes in her complaint that Celebrity Cruises "owned, managed, operated and/or controlled" the Celebrity Summit. Pl.'s Compl. ¶ 41. Furthermore, Steiner insists that Tran's allegation regarding the corporation's "operational control over [a] section of the ship" fails to demonstrate a demise charter. *Id.* ¶ 49. In essence, Steiner contends that control over a portion of a ship does not constitute the full possession and control of a vessel necessary to create a demise. Finally, Steiner stresses the fact that Tran has failed to provide any viable legal precedent in support of her legal position.

Tran in response contends that a party with operational control over a section of a ship can be held liable as a demise charterer. In support, she offers a general citation in Count VI to the First Circuit's decision in *Rodriguez v. McAllister Brothers, Inc.* but does not provide any explanation of how that case validates her contention. *See id.* ¶ 50. Additionally, she asserts that the determination of whether Steiner was a demise charterer is an issue of fact for a jury after the parties have conducted discovery. She therefore contends that it would be improper for the Court to decide this issue at the pleading stage.

Since Tran's complaint does not allege facts permitting liability for unseaworthiness on the part of Steiner, the Court grants Steiner's motion to dismiss Count VI. It is undisputed here that Celebrity Cruises was the sole owner of the vessel as a whole. *See id.* ¶¶ 41, 47. Accordingly, Steiner may only be held liable as a demise charterer. *See Wai*, 350 F. Supp. 2d at 1028–29. Yet a demise charter "assumes *full possession and control* of the vessel." *Id.* at 1028

(emphasis added) (quoting *Baker*, 656 F.2d at 182). In truth, cases consistently confirm the principle that a vessel's owner must "*completely and exclusively* relinquish 'possession, command, and navigation' thereof to the demisee" to create a demise charter. *Gatewood*, 2007 U.S. Dist. LEXIS 37484, at *18 (emphasis added) (quoting *Guzman v. Pichirilo*, 369 U.S. 698, 699 (1962)); *see also Lovette*, 2006 U.S. Dist. LEXIS 1451, at *7 n.1 ("A 'charter' is an arrangement whereby one person (the 'charterer') becomes entitled to the use of the *whole* of a vessel belonging to another (the 'owner')." (emphasis added)); *Finkel v. Challenger Marine Corp.*, 316 F. Supp. 549, 555 (S.D. Fla. 1970) ("All the cases agree that the *entire command and possession* of the vessel, and consequent control over its navigation, must be surrendered to the charterer before he can be held as special owner for the voyage or other service mentioned. The retention by the general owner of such command, possession, and control is incompatible with the existence at the same time of such special ownership in the charterer." (emphasis added) (quoting *Leary v. United States*, 81 U.S. (14 Wall.) 607, 611 (1872))). "Anything short of a relinquishment of *total control* is considered a voyage or a time charter or no charter at all." *Gatewood*, 2007 U.S. Dist. LEXIS 37484, at *19 (emphasis added). Indeed, Tran has failed to offer, and the Court is not independently aware of, any case law holding otherwise. Her citation to *Rodriguez* is inapposite as that decision unequivocally states that, "[i]n the absence of a writing, a demise charter requires showing essentially a change in ownership, a *complete relinquishment* of 'possession, command and navigation.'" *Rodriguez*, 736 F.2d at 815 (emphasis added). As a result, the Court concludes that Steiner's alleged control over a section of the Celebrity Summit cannot constitute a demise. The Court therefore dismisses Count VI of Tran's complaint.

### B. *Celebrity Cruises' Motion to Dismiss*

Celebrity Cruises' motion to dismiss targets four additional counts in Tran's complaint. In particular, Counts I and III allege negligence under the Jones Act for creating an unreasonably unsafe working environment and failing to provide prompt and adequate medical care, respectively. Count VII asserts a claim against the cruise line for failure to provide maintenance and cure. Finally, Tran attempts in Count IX to assert an additional claim for failure to provide prompt and adequate medical treatment independent of her prior Jones Act negligence claims. *See* Pl.'s Compl. ¶ 66. Celebrity Cruises now maintains that Tran has failed to sufficiently allege that it was her employer, thus relieving it of liability from these claims.

Pursuant to the Merchant Marine Act of 1920, also known as the Jones Act, "[a] seaman injured in the course of employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104 (2013). "As [this section] shows on its face, a seaman has the advantages of the Act only against his employer." *Wai*, 350 F. Supp. 2d at 1024 (quoting *Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 788 n.6 (1949)). Nonetheless, precedent from the former Fifth Circuit[1] has recognized an extension of liability under the Act via the borrowed servant doctrine. *See id.* at 1025. This doctrine is "the functional rule that places the risk of a worker's injury on his actual rather than his nominal employer. It permits the injured worker to recover from the company that was actually directing his work." *Baker*, 656 F.2d at 178.

Significantly, "[w]hen a seaman contends that one who did not sign his payroll checks is

---

[1] The Eleventh Circuit has adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207, 1209 (11th Cir. 1981) (en banc).

in fact his employer under the Jones Act, he must prove the employment relationship." *Wai*, 350 F. Supp. 2d at 1025. "An injured worker may show that he was a borrowed servant at the time of his injury by establishing that the employer against whom recovery is sought had the power to control and direct the servant in the performance of his work." *Id.* (quoting *Baker*, 656 F.2d at 178). Thus "the critical inquiry turns on the degree of control exercised over the crewmen." *Gatewood*, 2007 U.S. Dist. LEXIS 37484, at *12. This Court itself has acknowledged that the determination involves a multi-factored analysis. *See Wai*, 350 F. Supp. 2d at 1025. Consequently, the Court will evaluate the sufficiency of Tran's allegations in Counts I and III in light of this precedent.

Regarding Count VII's claim of failure to provide maintenance and cure, "[t]he general maritime law provides that a 'vessel and her owners are liable, in case a seaman falls sick, or is wounded, in the service of the ship, to the extent of his maintenance and cure, and to his wages, at least so long as the voyage is continued.'" *Id.* at 1029 (quoting *The Osceola*, 189 U.S. at 175). This duty "is imposed by the law itself as one annexed to the employment." *Id.* at 1030 (quoting *Cortes v. Baltimore Insular Line, Inc.*, 287 U.S. 367, 371 (1932)). "Since the right arises out of the employment relationship, the employer is the person liable." *Id.* (quoting *Solet v. M/V Capt. H.V. Dufrene*, 303 F. Supp. 980, 987 (D. La. 1969)). Though this duty arises out of the general maritime law, this Court has applied the Jones Act's borrowed servant doctrine in its evaluation of employer liability in claims for failure to provide maintenance and cure. *See id.* (determining that the plaintiff had failed to demonstrate an employment relationship in a claim for failure to provide maintenance and cure due to an earlier finding that the plaintiff had failed to demonstrate an employment relationship under the Jones Act's borrowed servant doctrine). Thus the Court

will evaluate the sufficiency of Tran's allegations in Count VII in the same manner as Counts I and III.

Finally, regarding Tran's claim for failure to treat in Count IX, "[a] shipowner has a duty to promptly provide adequate emergency medical care, as is reasonable under the circumstances, for an injured seaman." *Id.* Yet despite Tran's efforts to distinguish her allegations in Count IX from her earlier Jones Act claims, the Eleventh Circuit has referred to this type of claim as a "Jones Act claim on prompt and adequate medical care." *Garay v. Carnival Cruise Line, Inc.*, 904 F.2d 1527, 1532 (11th Cir. 1990); *see also Wai*, 350 F. Supp. 2d at 1030 (concluding that a claim for failure to treat "is properly considered a claim of negligence under the Jones Act"). Accordingly, the Court will analyze Count IX under the Jones Act as well.

In its motion to dismiss, Celebrity Cruises asserts that Tran has failed to offer sufficient factual allegations in support of her contention that the cruise line was her employer. It notes that the complaint contains no allegations regarding the status of any potential employment relationship beyond a general reference to the borrowed servant doctrine paired with unsupported legal conclusions that "[Tran] was employed by [Celebrity Cruises] as a seaman and was a member of the [Celebrity Summit's] crew." *See* Pl.'s Compl. ¶¶ 10–11, 22–23. Celebrity Cruises further stresses the absence of factual allegations pertaining to any supposed control that it had over Tran. Indeed, the cruise line observes that Tran's only mention of control is in relation to Steiner's "operational control over the section of the ship where the spa was located." *Id.* ¶ 48.

In her response, Tran emphasizes the fact that Rule 8 does not require detailed factual allegations in a complaint. She insists that she has therefore sufficiently alleged that Celebrity

Cruises was her employer under the borrowed servant doctrine. Moreover, she maintains that it would be inappropriate for the Court to decide at this stage whether she was in fact a borrowed servant as that determination would require the Court to look at facts beyond the complaint. Relying on this Court's decision in *Petrovic v. Princess Cruise Lines, Ltd.*, Tran claims that the doctrine instead allows her to sue multiple defendants as potential employers, thereby reserving the matter for a jury. *See* Pl.'s Resp. to Celebrity Cruises' Mot. to Dismiss 6. At the very least, she argues that this issue is a mixed question of fact and law that entitles her to discovery.

In spite of Tran's arguments to the contrary, her complaint fails to allege sufficient facts in support of her contention that a borrowed servant relationship existed between her and Celebrity Cruises. She offers nothing more than unsubstantiated legal conclusions that "[she] was employed by [Celebrity Cruises] as a seaman and was a member of the [Celebrity Summit's] crew." Pl.'s Compl. ¶¶ 10, 22, 62. To this end, she attempts to allege a borrowed servant relationship by asserting that "[l]ong-standing maritime jurisprudence allows a Plaintiff-seafarer to sue multiple Defendants as 'alleged potential Jones Act employers,'" leaving the ultimate resolution of the issue to a jury. *Id.* ¶¶ 11, 23. Yet she does not provide any facts defining her supposed employment relationship with Celebrity Cruises. More importantly, she makes no effort to describe the degree of putative control the cruise line had over her, the crucial inquiry in determining whether a borrowed servant relationship existed. As the Supreme Court has stated, such legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Though these allegations need not be detailed, they must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Tran further misses the mark in asserting that it would be inappropriate for the Court to decide the matter at this stage. In requiring factual support for her allegations, the Court in truth is not striving to conclusively determine whether a borrowed servant relationship existed. The Court rather asks that she provide a sufficient factual basis for her legal conclusions in accordance with the requirements of Rule 8. *See Iqbal*, 556 U.S. at 679. Thus "even if [Tran] were correct that long-standing maritime jurisprudence allows [her] to sue multiple defendants as potential employers, such law does not address the inadequacies of the Complaint, which fails to allege that [Celebrity Cruises is a] potential employer[] with supporting facts making such allegation plausible." *Petrovic v. Princess Cruise Lines, Ltd.*, No. 12-21588-CIV-ALTONAGA/Simonton, 2012 U.S. Dist. LEXIS 100919, at *14 (S.D. Fla. July 20, 2012). In addition, the Supreme Court has rejected Tran's contention that the issue entitles her to discovery: "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. Indeed, this Court dismissed this precise argument in *Petrovic*, the case upon which Tran relies. *See Petrovic*, 2012 U.S. Dist. LEXIS 100919, at *14 (dismissing the plaintiff's complaint despite his argument that the borrowed servant doctrine assigned the issue of employer identity to a jury and that "without the aid of discovery, it [was] 'impossible at [the] pleading stage to make a determination as to who was [his] employer'"). For these reasons, the Court grants Celebrity Cruises' motion and dismisses Counts I, III, VII, and IX without prejudice and with leave to refile no later than **June 24, 2013**.

## IV. CONCLUSION

For the above reasons, it is

**ADJUDGED** that:

(1) Defendant Steiner Transocean Limited's Motion to Dismiss Count VI (Unseaworthiness) for Failure to State a Cause of Action **(D.E. No. 14)**, filed on **December 18, 2012**, is GRANTED. The Court therefore dismisses Count VI of the complaint.

(2) Defendant Celebrity Cruises, Inc.'s Motion to Dismiss Counts I, III, VII & IX of Plaintiff's Complaint **(D.E. No. 15)**, filed on **December 18, 2012**, is GRANTED. The Court dismisses Counts I, III, VII, and IX of the complaint without prejudice and with leave to refile. Plaintiff Le Tran may file her amended complaint no later than **June 24, 2013**.

DONE AND ORDERED in Chambers at Miami, Florida, this 22 day of May, 2013.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record